No: 23-35086

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

DAVID STREETER and KATJA STREETER,

Plaintiffs-Appellants,

v.

USAA GENERAL INDEMNITY COMPANY,

Defendant-Appellee,

_____

**APPELLANTS' BRIEF**

_____

On Appeal from the United States District Court for the District of Montana
Cause No. 9:20-cv-00188-DLC (Hon. Dana L. Christensen)

| | |
|---|---|
| Lon J. Dale, Esq.<br>Michael P. Sherwood, Esq.<br>MILODRAGOVICH, DALE &<br>STEINBRENNER, P.C.<br>620 High Park Way<br>PO Box 4947<br>Missoula, MT 59806-4947<br>P (406) 728-1455 ** F (406) 549-7077<br>lon@bigskylawyers.com<br>msherwood@bigskylawyers.com<br>Jenna P. Lyons, Esq.<br>REEP, BELL & JASPER, P.C.<br>PO Box 16960<br>Missoula, MT 59808-6960<br>P (406) 541-4100 ** F (406) 541-4101<br>lyons@westernmontanalaw.com<br>*Attorneys for Plaintiff/Appellant* | Jeremy A. Moseley<br>Hannah S. McCalla<br>SPENCER FANE LLP<br>1700 Lincoln Street, Suite 2000<br>Denver, CO 80203<br>P (303) 839-3800 ** F (303) 839-3741<br>jmoseley@spencerfane.com<br>hmccalla@spencerfane.com<br>*Attorneys for Defendant/Appellee* |

# TABLE OF CONTENTS

<u>Page</u>

I.     JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . 1

III.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

A.    Substantial Cooperation Provided by the Streeters . . . . . . . . . . . . . . . . . . . 15

B.    Magistrate and Article III Judge Incorrectly "Erie Guessed" Montana Substantive Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

         i.     Substantive Law Used was "Erie Guess" . . . . . . . . . . . . . . . . 19

         ii.    Certification is an Appropriate Remedy . . . . . . . . . . . . . . . . . 19

         iii.   Failure to Cooperate Requires Prejudice . . . . . . . . . . . . . . . . 20

         iv.   Substantial Case Law and Treatises Contradict the Court's Ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

         v.    District Court Relieved Insurer from its Burden of Proof . . . . 28

         vi.   Proposed Certified Question . . . . . . . . . . . . . . . . . . . . . . . . . . 30

C.    Court's Cases Inapplicable to the Streeters' Facts . . . . . . . . . . . . . . . . . . . 31

D.  The Cases upon Which the District Court Relied Are Inapplicable to the Facts in the Case at Bar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    i.  Court's Selection on Case Law from Other Jurisdictions . . . . 34

    ii.  The District Court Erroneously Relied upon Inapposite Case Law from Jurisdictions Other than Montana . . . . . . . . . . . . . 37

E.  The Data Phone Records are a Red Herring . . . . . . . . . . . . . . . . . . . . . 40

F.  The Court's Presumption of Prejudice Ignored Law Favoring Streeters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

G.  Whether There Is a Lack of Cooperation Terminating Coverage Is a Jury Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

H.  Factual Review Places Data Issues in Perspective . . . . . . . . . . . . . . . . . 47

I.  The Rules of Evidence Were Ignored . . . . . . . . . . . . . . . . . . . . . . . . . . 49

J.  Significant Policy Benefits Unpaid and Collateral Damages Denied by Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

    i.  Payments Received Deceiving as to Actual Uncompensated Harm Sustained by the Streeters . . . . . . . . . . . . . . . . . . . . . . 50

    ii.  Timing of Payments Illustrates USAA GIC's Dilatory Actions Caused Streeters Unpaid Damages . . . . . . . . . . . . . . . . . . . . 51

    iii.  Unpaid Insurance Benefits and Potential Damages . . . . . . . . 54

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

VIII.  STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

iii

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

*Am. Beverage Ass'n. v. City of San Francisco*
916 F. 3d 749 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 42

*Am. Diabetes Ass'n. v. United States Dept't of the Army*
938 F. 3d 1147 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 54

*American Fire & Casualty Co. v. Vliet*
148 Fla. 568, 4 So. 2d 862 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Atl. Ca. Ins. Co. v. Greytak*
379 Mont 332, 250 P.3d 63 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Bailey v. Universal Underwriters Ins. Co.*
258 Or. 201, 474 P.2d 746 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Bowyer v. Thomas*
188 W. Virg. 299, 423 S.E.2d 906 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Brooks Transp. Co. v. Merchants Mut. Casualty Co.*
36 Del. 40, 171 A. 207 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Clark Equip. Co. v. Arizona Property and Casualty Ins. Guar. Fund*
189 Ariz. 433, 943 P.2d 793 (Ariz. App. 1997). . . . . . . . . . . . . . . . . . . . . 21

*Clemmer v. Hartford Ins. Co.*
22 Cal. 3d 865, 587 P.2d 1098 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Coleman v. New Amsterdam Cas. Co.*
247 N.Y. 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Contractors Bonding and Insurance Company v. Sandrock*
  321 F. Supp. 3d 1205 (D. Mont. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Country Mutual Insurance Company v. Under Construction and Remodeling, Inc.*
  2021 IL App (1st) 210600, 2021 WL 6061771 (Ill. App. Ct. 1st Dist. 2021)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Cribari v. Allstate Fire & Casualty Insurance Company*
  375 F. Supp. 3d 1189 (D. Colo. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Darcy v. Hartford Ins. Co.*
  407 Mass. 481, 554 N.E.2d 28 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*Erie R.R. Co. v. Tompkins*
  304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Expressions Hair Design v. Schneiderman*
  137 S.Ct. 1144 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Farley v. Farmers Ins. Exch.*
  91 Idaho 37, 415 P.2d 680 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Habecker v. Peerless Ins. Co.*
  2008 WL 4922529 (M.D. Pa. Nov. 14, 2008) . . . . . . . . . . . . . . . . . . . . 34-37

*Hall v. Allstate Fire and Casualty Ins. Co.*
  20 F. 4th 1319 (10th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37-39

*Hansen v. Barmore*
  779 P.2d 1360 (Colo. App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*In  Matchniff v. Great Northwest Insurance Company*
  224 F. Supp. 3d 1119 (D. Or. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*J.P. Morgan Securities Inc. v. Vigilant Ins. Co.*
  53 Misc. 3d 694, 39 N.Y.S.3d 864 (Sup 2016) . . . . . . . . . . . . . . . . . . . . . . 26

v

*King v. State Farm Mut. Ins. Co.*
　　2019 MT 208, 397 Mont. 126, 447 P.3d 1043 (2019) . . . . . . . . . . . . . . . . 56

*Lehman Bros. v. Schein*
　　416 U.S. 386 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*
　　5 F.4th 952 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Matter of New York Cent. Mut. Fire Ins. Co. v. Salomon*
　　11 A.D.3d 315, 782 N.Y.S.2d 730 (2004) . . . . . . . . . . . . . . . . . . . . . . . . 23

*McCoy v. Travelers Indemnity Company of America*
　　2002 WL 31186978 (M.D. Pa. Fe. 8 2002) . . . . . . . . . . . . . . . . . . . . . . 34-37

*McKesson v. Doe*
　　141 S.Ct. 48 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Mount Vernon Fire Ins. Co. v. 170 E. 106th St. Realty Corp.*
　　212 A.D.2d 419, 622 N.Y.S.2d 758 (1995), *lv. denied* 86 N.Y.2d 707, 632
　　N.Y.S.2d 500, 656 N.E.2d 599 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 23-25

*Murray v. BEJ Minerals, LLC*
　　924 F.3d 1070 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*National Union Fire Ins. Co. v. Cagle*
　　68 F.3d 905 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*National Union Fire Insurance Company of Pittsburgh, PA. v. The Fund for
Animals, Inc.*
　　451 Md. 431, 153 A.3d 123 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*New York Cent. Mut. Fire Ins. Co. v. Salomon*
　　11 A.D.3d 315, 782 N.Y.S.2d 730 (1st Dep't 2004) . . . . . . . . . . . . . . . . . 24

*Norcia v. Samsung Telecomms. Am., LLC*
    845 F.3d 1279 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Prudential Property and Casualty Co. v. Erie Ins. Co.*
    660 F. Supp. 79 (E.D. Pa. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Riordan v. State Farm Mut. Ins. Co.*
    589 F.3d 999 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Rochon v. Preferred Accident Ins. Co.*
    118 Conn. 190, 171 A. 429 (1934). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rosalez v. Unigard Ins. Co.*
    283 Or. 63, 581 P.2d 945 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Seymour v. Safeco Ins. Co. of Illinois*
    2014 WL 1254877 (D. Mont. July 24, 2014). . . . . . . . . . . . . . . . . . . . . 31-32

*State Farm Mut. Auto. Ins. Co. v. Davies*
    226 Va. 310, 310 S.E.2d 167 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*State Farm Mut. Ins. Co. v. Murion*
    439 F.2d 945 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*Steadele v. Colony Ins. Co.*
    260 P.3d 145 (Mont. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Stephens v. Union Pac. R.R. Co.*
    935 F.3d 852 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stewart Sleep Ctr. v. Atlantic Mut. Ins. Co.*
    860 F. Supp. 1514 (M.D. Fla. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 44

*Thrasher v. United States Liab. Ins. Co.*
    19 N.Y.2d 159, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967) . . . . . . . . . 24-25

*Tran v. State Farm Fire and Cas. Co.*
    136 Wash.2d 214 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-37

*U.S. v. Gonzales-Benitez*
    537 F.2d 1051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Utica Mut. Ins. Co. v. Gruzlewski*
    217 A.D.2d 903, 630 N.Y.S.2d 826 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES

28 United States Code § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 United States Code § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Appellate Procedure 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Federal Rule of Appellate Procedure 32(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . 60

Federal Rule of Appellate Procedure 32(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . 60

Federal Rule of Appellate Procedure 32(f). . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Federal Rules of Appellate Procedure 10(e). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Maryland Code Annotated § 19-110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Montana Rule of Appellate Procedure 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Montana Rule of Appellate Procedure 15(3) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Ninth Circuit Rule 32-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

## OTHER AUTHORITY

16 Williston on Contracts § 49:108 (4th ed.). . . . . . . . . . . . . . . . . . . . . . . . . 27-28

16 Williston on Contracts § 49:110 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

Black's Law Dictionary (11th Ed. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## I.   JURISDICTIONAL STATEMENT

The United States District Court for the District of Montana had jurisdiction under 28 U.S.C. § 1332, as the matter is between citizens of different states, and the amount in controversy exceeds $75,000.  On January 25, 2023, the District Court issued its Order granting, among others, USAA's Motion for Summary Judgment. 1-ER-3 to 25.  Also, on January 25, 2023, the Clerk's Judgment was filed.  1-ER-2. Appellants, the Streeters timely filed a Notice of Appeal on February 1, 2023.  11-ER-2507 to 2522.   Pursuant to 28 U.S.C. § 1291, this Court has jurisdiction.

## II.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

Appellants raise the following issues on appeal:

1.    Did the Magistrate and the District Court erroneously render an "Erie Guess" on Montana's substantive law by stating the Streeters' lack of cooperation could be presumed by the court thus allowing summary judgment and precluding questions of fact for the jury?

2.    Did the Article III Judge abuse his discretion by totally affirming the Magistrate's Findings and Recommendations while ignoring the specifics of Streeters' objections to the Magistrate's Findings and Recommendations and perpetuating the Magistrate's erroneous findings that were contrary to the evidence resulting in a failure to conduct the required *de novo* review?

1

## III.  STATEMENT OF THE CASE

David Streeter is a disabled veteran and Katja Streeter is a registered nurse. D. Streeter's Examination Under Oath ("David's EOU"), pp. 21, 23, and 26 (Nov. 27, 2019); K. Streeter's Examination Under Oath ("Katja's EOU"), p. 17 (Nov. 27, 2019)[1].  In 2017, the Streeters built their home near Kalispell located at 42 Blue Sky Lane.  9-ER-1790, ¶10.  USAA GIC issued a renewal policy of insurance for the Streeters' property located at 42 Blue Sky Lane, Kalispell, Montana 59901, subject to all of the policy's terms, limits, conditions, and exclusions, for the policy period from July 10, 2019 to July 10, 2020.  11-ER-2371, ¶3.

The Streeters home as of July 2019 was underinsured with a stated value coverage of $395,000 and a mortgage of $467,519.92.  1-ER-8; 2-ER-118; 7-ER-1313; 4-ER-540 to 541.  As of July 2019 the combined income of the Streeters was in excess of $120,000.  2-ER-119 to 120.[2]  In July of 2019 the Streeters were current on all of their debts and obligations.  David's EOU, p. 33.

---

1 Streeters will be filing motion to supplement the record pursuant to FRAP 10(e) regarding their Examinations Under Oath (EUO), which have been referenced in the pleadings, but were not filed of record.

2 Dollar amount was set forth in income returns provided, which are part of the claims file, and in David's EUO, p. 31, and Katja's EUO, p. 27.

On July 11, 2019, the Streeters were on a camping trip miles from their home when they were advised that there was a fire in their home. 9-ER-1790 to 1791, ¶11; 3-ER-288 to 289.[3] The July 11 fire was reported to USAA GIC. 11-ER-2371, ¶6. The first fire was described by USAA GIC's investigator Norm Loftin to be "a plausible accidental cause" by a "halogen work light on in the crawl space of the house." 3-ER-288. The July 11 fire was classified by the fire department as "accidental." 4-ER-638. After the first fire was thought to be out, the property was released to the Streeters, who went to a hotel. 3-ER-290; 3-ER-401. After the first July 11 fire was reported as extinguished and firefighters left the scene, and before the Streeters left for the hotel, they parked their new camper and pickup in the driveway of their home. 5-ER-704; 3-ER-402 (*see* July 11, 2019 Approx. 2200 entry on time line). Luckily the firefighters saved the camper and truck from total destruction from the second fire, although the camper did sustain significant damages that had to be repaired. 5-ER-704. The first fire resulted in partial damage to the home, while the second fire totally destroyed the home. 8-ER-1635. Plaintiffs opened a fire loss claim with USAA GIC on or around July 11, 2019. 11-ER-2371, ¶6. USAA GIC hired a fire investigator, Norm Loftin, to investigate the

---

3 For a detailed time line of events surrounding the fire, see 3-ER-401 to 404.

3

fire losses.  3-ER-468.  On July 15, 2019, the Streeters participated in an in-person

interview with USAA GIC's cause and origin expert, Norm Loftin.  8-ER-1627,

¶12; 8-ER-1634.  Mr. Loftin reported to USAA GIC that there were two fires, "the

first caused by a halogen lamp plugged in located in the crawl space. The second

fire is undetermined at this time."  2-ER-237.  USAA GIC Claims Representative

stated in the claims file that O&C, i.e., origin and cause expert Loftin "advised there

is a there is a possibility that may have been a rekindle . . ."[4]  3-ER-458.  Norm

Loftin took debris samples for laboratory tested for possible accelerates.  3-ER-366.

The four samples were tested with no ignitable liquids identified in the debris

samples.  3-ER-366.

During the course of the litigation, the Streeters deposed Norm Loftin who

was later disclosed as their expert.  4-ER-460 to 654.  Mr. Loftin provided the

following opinions during the course of his deposition:

- •  USAA expert Loftin testified there was a 30-50 percent chance that the July 12, 2019 fire was a rekindle of the July 11, 2019 fire.[5]  4-ER-587.

---

4 Mr. Loftin was not disclosed as an expert for USAA, but was disclosed by the Streeters as their expert.

5 Streeters fire expert, Jeff Laverman opined the possibility that the second fire was a rekindle cannot be ruled out as a cause.  3-ER-371.

- USAA expert Loftin testified if he were in charge of the July 11, 2019 fire he would have sent firemen into the crawl space to check for hot spots. 4-ER-587.

- USAA expert Loftin testified if he were in charge of the July 11, 2019 fire he would have sent firemen into the attic to check for hot spots. 4-ER-588.

- USAA expert Loftin testified given the damage to the ceiling in the July 11, 2019 fire the firemen should have used a probing pole to open the ceiling to check for hot spots. 4-ER-518 to 520.

5-ER-718.

The Policy requires that Plaintiffs comply with certain duties after an

accident or loss as a condition of coverage:

**SECTION I - CONDITIONS**

2. Your Duties After Loss. In case of a loss to which this insurance may apply you must see that the following duties are done:
. . .
e. Cooperate with us in the investigation of a claim.
. . .
    g. As often as we reasonably require:
. . .
(2) Provide us with records and documents we request and permit us to make copies.

8-ER-1454.

The Streeters took extensive actions to cooperate with USAA GIC's

investigation of their fire loss as noted in a detailed time line. *See* time line, *infra*.

5

The Streeters submitted to all initial inquiries and requests sought by USAA GIC including the execution of authorization forms presented to them by USAA GIC specifying the parameters of the matters that USAA GIC was authorized to examine. 2-ER-180, ¶9; 2-ER-193 to 194. USAA GIC requested and the Streeters provided all phone billing records shortly after the fire which detailed dates and times of all call information. 8-ER-1627, ¶14. The Streeters also provided their phones and computers to a designated representative of USAA GIC. 8-ER-1627, ¶17. After there were accusations that the Streeters deleted information asserted by the USAA GIC Representative, on August 26, 2019, David Streeter authored an email to USAA GIC's Claims Representative "suspending" further transfer from USAA GIC's agent OneSource to USAA GIA of information pending certain conditions being satisfied, including a call from the claims representative's supervisor. 8-ER-1566; David's EUO p. 95.

After the August 26, 2019 suspension email, the Streeters obtained counsel, and there was significant correspondence between Streeters counsel and USAA's counsel. 2-ER-179 to 180; 2-ER-181 to 192. The Streeters submitted to sworn statements under oath on November 27, 2019. 9-ER-1794, ¶26; 11-ER-2372, ¶11. USAA GIC only made a $5,000 initial payment under the policy and did not make

any further payments until demanded to do so by the Streeters' counsel pursuant to proofs of loss submitted in late January and early February, 2020. 11-ER-2372. Benefits available under the insuring agreement remain unpaid. 9-ER-1839, ¶58.

The Streeters did not file their cause of action for breach of contract and bad faith concerning USAA GIC's failure to timely pay amounts under the insuring agreement, and damages for delay of payments until December, 2020, fifteen months after the July 2019 fire loss. 9-ER-1788 to 1808. The issue of cooperation was only specifically asserted by USAA GIC in June of 2022 when it sought to amend its Answer to include failure to cooperate as an affirmative defense. 9-ER-1862 to 2000. The motion to amend was opposed, and was closely followed by USAA GIC's Motion for Summary Judgment. 10-ER-2209 to 2273; 7-ER-1419 to 1451. The Magistrate allowed the amendment of the answer on August 19, 2022, and that same day USAA GIC filed its motion and supporting brief for summary judgment. *Id.* Summary judgment was entered by the Magistrate on September 27, 2022. 2-ER-137 to 145. A jury trial was scheduled to start before Article III Judge Dana Christensen on October 30, 2022. 11-ER-2406 to 2407. Numerous other fully briefed motions were pending ruling by the Magistrate, including motions *in limine* and the Streeters' Motion for Partial Summary Judgment regarding stated valued

7

payments. 7-ER-1291 to 1308. One motion *in limine* requested the exclusion of USAA GIC's fire expert Lonnie Larson. 2-ER-229 to 232; 3-ER-260 to 286. Although pending for weeks the Streeters' motions went without any rulings from the Magistrate, and in conjunction with summary judgment were dismissed as moot. 1-ER-25.

## IV.    SUMMARY OF ARGUMENT

This case may be illustrative of what is likely a systemic problem with the failure of thorough *de novo* reviews of Magistrates' Findings and Recommendations after receipt of objections to preliminary rulings on dispositive motions. As to be demonstrated, the matter *sub judice* abounds with numerous issues of material fact precluding summary judgment; yet, the Article III Judge windowdressed[6] the Magistrate's preliminary summary judgment ruling by repeating the same erroneous conclusions that ought to have been remedied by reversal of clear errors and placement of the matter back on the trial calendar.

Aside from the absolute absence of any financial benefit from the complete loss of their newly built home and all of their personal property, the most glaring example of the Article III Judge's haphazard review of the Magistrate's preliminary

_____

6 Oxford definition for widowdressing, "An adroit but superficial or actually misleading presentation of something, designed to create a favorable impression."

summary judgment ruling is the misrepresentation of the Streeters' *pro se* email to the USAA GIC's Claims Representative sent within about five weeks of the Streeters' loss by fire of their newly constructed and underinsured home. The email **<u>never</u>** revoked authorization for their computer and phone digital data. Instead, the Streeters "suspended" the authorization to share information already provided to USAA's designated representative subject to some very mundane conditions, and then allowed complete access to already furnished digital data during the course of litigation. 8-ER-1566. Yet, the Article III Judge made the following statement in his Order affirming summary judgment: "The Streeters then entirely revoked USAA's access to their electronic records held by OneSource. (Doc. 61-9 at 1)". 1-ER-19. So what is the citation to the record? Document 61-9, now 8-ER-1566, is an email dated August 26, 2019, from David Streeter to a USAA Claims Representative. What does this August 26 email actually say? 8-ER-1566. The language of the August 26 email was never cited by the Magistrate or Article III Judge in their Orders. 1-ER-3 to 25; 2-ER-117 to 145.

> "At this time I am **suspending** [emphasis supplied] the right for One Source to share any further personal information with USAA or any of its member companies or organization that has been gathered from my computers or cell phone devices. One Source Solutions is authorized to keep all information in there (sic) control until such time as my requests are granted."

8-ER-1566.  [Emphasis added.]

So what were the Streeters' requests?  First, "I would like a number to your immediate supervisor and numbers to everyone in your chain of command." *Id.* Second, "I want a transcript of all calls that you have recorded when I have spoken with your company. To include all call logs."  8-ER-1566.  Third, "I want a statement from USAA exactly why, to the finest detail, why USAA believes such information will assist them in their investigation.  You already have my pinging information and you should have video and witness statements that do not put me anywhere near the sight of my house fire."[7]  8-ER-1566.  Fourth, "At this time I demand to be treated as a customer, not a criminal. My daughter starts school next week and it will become a great hardship if we are not allowed to enter a rental agreement, along with USAA and backed by my insurance policy, and allow to live within her school district."  8-ER-1566.  Fifth, "I would like an explanation from USAA in writing why it seems I am the focus of your investigation when the Sheriffs department in Flathead County has no means to charge me with any crime."  8-ER-1566.  Sixth, "I would like this information by end of day 8-2-19 (sic) and or

---

7 Law enforcement had video tape obtained through discovery showing David Streeter and his wife checking into the hotel and not leaving until receiving word of the second fire.

10

a call from your supervisor today." 8-ER-1566. Signed David Streeter. 8-ER-1566.

The Magistrate repeatedly and incorrectly characterized Mr. Streeter's August 26 email as a "revocation" when it was unquestionably a suspension is the cornerstone of the Magistrate's provisional summary judgment order. 2-ER-135, 140, and 142. Yet, instead of thoroughly and critically reviewing the content of the Streeters' August 26 suspension email, the Article III Judge wholly adopted the Magistrate's Findings and Recommendations without any statement to or critical review of the points raised in Streeters' objection, which directly contradicted the insertion of revocation for suspension. 2-ER-163 to 165. Nor did the Article III Judge reference to or discuss any of Mr. Streeter's email suspension conditions. 1-ER-3 to 25. The Magistrate concluded the referenced email and claims of deletion that never materialized was a failure to cooperate resulting in a termination of all of the Streeters' contractual rights to unpaid insurance benefits along with their bad faith tort claims. 2-ER-143 to 144. Whether Mr. Streeter's single email eviscerates all of the Streeters' contractual rights based upon a failure to cooperate under the terms of the policy is at best a question of fact for a jury, and more likely upon a thorough analysis with correct case law not a valid policy defense.

11

An analysis of the distinguishable case law cited by the Magistrate, and mistakenly adopted by the Article III Judge, decisively demonstrates the inapplicability of lack of cooperation as an affirmative defense to Streeters' contract and tort claims. Both the Magistrate and the Article III Judge failed to acknowledge the extensive and detailed written authorizations executed by the Streeters shortly after the fire claim was reported. 2-ER-193 to 194. Invalidation of USAA GIC's written Authorizations required specific procedures for revocation. 2-ER-193 to 194. No revocation ever occurred pursuant to the terms of USAA GIC's own authorization. USAA GIC had full written Authorizations in their terms to obtain the Streeters' designated information from any source. 2-ER-193 to 194.

Although the Article III Judge acknowledged, referenced, and accepted the additional information supplied by Declaration, including the Streeters' former counsel's detailed and repeated attempts to acquire information and obtain explanations for USAA GIC's delays in payments, the Article III Judge discounted the information as "having no effect on its analysis." 2-ER-178 to 194; 1-ER-16.

What should have an effect on the Court's analysis is the fact that the electronic information provided to OneSource and USAA GIC in 2019 conclusively showed that no material information had been altered, deleted, or otherwise

12

manipulated. The initial OneSource report was 267 pages long and outlined the

phone calls, texts, and web searches made by the Streeters for the dates requested.

6-ER-952; 6-ER-962 to 1228. USAA GIC's own claims notes confirmed nothing of

significance within these records. 8-ER-1635 to 1645; 5-ER-841. Then, for

reasons unknown, USAA GIC deleted these records from its official claims file,

depriving the Streeters and their counsel the ability to review, prompting a Motion

for Spoliation filed late in the litigation on August 15, 2022; motion was filed after

USAA GIC's motion for summary judgment had already been filed. 5-ER-830 to

832. The Streeters attempted to bring this issue to the Court's attention by filing a

supplemental motion to include the spoliation briefing within the record on

summary judgment, but it was summarily dismissed as irrelevant. 8-ER-1728 to

1747; 1-ER-3 to 25. This was a mistake. The fact that USAA GIC's entire

argument about the Streeters "hiding" or being non-cooperative about their

electronic data, when evidence USAA GIC had it in its possession the entire time

but chose to delete it without cause, makes the issue very relevant and it should be

taken into consideration by this Court.

The errors of the Magistrate, ignored and then ratified by the Article III Judge,

mandate reversal of summary judgment, and remand to the District Court for

determination of the numerous undecided fully briefed motions and ultimately a jury trial.

## V.     STANDARD OF REVIEW

A grant of summary judgment by the District Court is reviewed *de novo*. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019).  There is no dispute that the claims asserted are governed by Montana law, so the District Court was required to determine the matters at issue as the Montana Supreme Court would.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017).  In the absence of state-law guidance, a district court must leave the balancing of the pros and cons of a certain interpretation to state courts.  *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019).

A district court abuses its discretion if it rests its decision on an erroneous legal standard or on clearly erroneous factual findings.  *Am. Beverage Ass'n. v. City of San Francisco*, 916 F. 3d 749, 754 (9th Cir. 2019) (*en banc*).

 A finding of mootness is reviewed *de novo*.  *Am. Diabetes Ass'n. v. United States Dept't of the Army*, 938 F. 3d 1147, 1151 (9th Cir. 2019).

A district court's order granting summary judgment is reviewed *de novo* by

"...viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion."  *Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*, 5 F.4th 952, 956 (9th Cir. 2021).

## VI.    ARGUMENT

### A.    Substantial Cooperation Provided by the Streeters

The Streeters took the following steps or actions to cooperate with USAA GIC's investigation into their fire loss:

- On July 12, 2019, David Streeter gave a statement and participated in a recorded interview with Detective Schuster of the Flathead County Sheriff's Department, where he answered all questions regarding his activities and knowledge of the fire event.  8-ER-1626.

- On July 15, 2019, the Streeters participated in an in-person recorded interview with USAA GIC Agent Lisa Heisey where they answered fully every question asked.  8-ER-1626.  On the same date, they signed authorizations for the release of information.  2-ER-180; 2-ER-193 to 194.

- On July 15, 2019, the Streeters participated in an in-person interview with USAA GIC cause and origin expert, Norm Loftin[8], where they

8 Norm Loftin was a qualified fire investigator hired by USAA GIG to investigate the Streeters fires.  Mr. Loftin submitted an oral report to USAA

answered all questions asked about their activities and knowledge of the fire event.  8-ER-1626.

• USAA GIC requested the Streeters sign Authorizations for the release of information on July 17, 2019, which both Streeters executed.  2-ER-193 to 194.

• The authorization including the following language: "I authorize and consent to the release, disclosure, collections, and use of the information described in this paragraph. The term information includes, but is not limited to, records and knowledge in analog, digital, written, graphic, video and data form; documentation; notes; billing records or similar statements; credit-related information such as application for credit and credit reports; account statements; video and sound recordings; computer records and data; any other method or form that the record and knowledge is stored and retained . . ."  2-ER-193 to 194.

• On July 18, 2019, the Streeters participated in a recorded interview with SIU Agent Angela Ritchie.  8-ER-1626.   During this interview Ms. Ritchie requested copies of the mortgage refinance records, proof of income, and text and detail logs from only the dates of July 8th to July 15th, 2019.  8-ER-1626.  This request was also submitted to the Streeters via email to confirm the data and information USAA GIC was requesting.  8-ER-1626.

• On July 24, 2019, the Streeters emailed the refinance documents, proof

---

documented in the claims file stating the first fire was caused by a light left on in the crawl space and the second fire was a possible rekindle (fire reignited because it was not entirely extinguished).  3-ER-458.  Loftin agreed in his deposition that the first fire was properly classified as "accidental" and the second fire was "undetermined."  4-ER-637 to 638.

of income, and complete Verizon phone records[9] of David, Katja, and Sarah Streeter from June 14, 2019 through July 13, 2019 per USAA GIC's request. 8-ER-1626.

• On August 1, 2019, the Streeters met with a representative from OneSource and allowed a complete data extraction of their phones per USAA GIC's request, subject only to the requested parameters requested by Ms. Ritchie. 8-ER-1626.

• On August 19, 2019, the Streeters agreed to an expanded data pull of their phones per Ms. Ritchie's request, which was forwarded to OneSource the same day. 8-ER-1628.

• On August 26, 2019, David Streeter emailed a suspension of transfer of digital information. 8-ER–1566.

• On August 26, 2019, USAA GIC informed the Streeters it was hiring an attorney and preparing for EUOs, forcing the Streeters to retain their own counsel and prompting direct communications to be suspended. 8-ER-1628.

• On September 4, 2019, the Streeters' attorney, Matt Hutchison, wrote to USAA GIC and requested, amongst other things, a complete copy of USAA GIC's claims file and any documents or information upon which USAA GIC was relying to suggest that the Streeters had failed to cooperate in USAA GIC's investigation. 2-ER-179; 2-ER-181 to 183. He received no direct response to these inquiries.

• On September 13, 2019, Mr. Hutchison again wrote to USAA GIC requesting that, if USAA GIC was contesting the Streeters' claim, to please provide all pertinent facts, documents, and/or insurance policy

---

9 These Verizon records include the specifics of all calls and numbers, including each day and times of calls. 8-ER-1660 to 1677. The records also include the detailed calls made between July 8 and July 15. 8-ER-1660, 1668 to 1669.

17

provisions upon which USAA GIC was relying or which USAA GIC believed supported a basis to contest the Streeters' claim. 2-ER-179; 2-ER-185 to 186. He received no direct response to this inquiry.

- On October 9, 2019, Mr. Hutchison again wrote to USAA GIC following up on his September 4 and 13, 2019, letters, and again requested any documents or information upon which USAA GIC was relying to suggest that the Streeters had failed to cooperate in USAA GIC's investigation. 2-ER-179 to 180; 2-ER-187 to 188. He received no direct response to these inquiries.

- On November 27, 2019, the Streeters participated in EUOs with USAA GIC attorney David McLean, where they answered every question that was asked of them while under oath. 8-ER-1628.

- On December 30, 2019, Mr. Hutchison wrote a final letter to USAA GIC asserting the Streeters' full cooperation and demanding a coverage decision. 2-ER-180; 2-ER-191 to 192. USAA GIC did not respond, forcing the Streeters to hire new counsel and submit proofs of loss, which finally prompted the first payments of the claim in February of 2020. 11-ER-2372.

- From February of 2020 until the Streeters' Complaint was filed in December of 2020, the Streeters continued participating in USAA GIC's investigation and accepted multiple Policy payments from USAA GIC without ever receiving a reservation of rights letter or notice of noncompliance. 11-ER-2372; 10-ER-2018; 10-ER-2026; 8-ER-1566.

All the specifics of the detailed cooperation of the Streeters were emphasized in the Streeters' Objections to the Magistrate's Findings, but ignored by the Article III Judge. 2-ER-157 to 159; 1-ER-3 to 25.

18

**B.    Magistrate and Article III Judge Incorrectly "Erie Guessed" Montana Substantive Law**

    i.    <u>Substantive Law Used was "Erie Guess"</u>

A district court abuses its discretion if it rests its decision on an erroneous legal standard or on clearly erroneous factual findings.  *Am. Beverage Ass'n. v. City of San Francisco*, 916 F. 3d 749, 754 (9th Cir. 2019) (*en banc*).  Both Article  III Judge Christensen and Magistrate DeSoto acknowledged the dearth of any controlling Montana case law regarding the standard to be apply to the application of an insurance agreement's cooperation clause when used by an insurer to void coverage.  1-ER-12; 2-ER-128.  Both the Magistrate and Article III Judge abused their discretion in endorsing substantive law foreign to Montana instead of certifying to the Montana Supreme Court the question of Montana law relating to the application of insurance cooperation clauses.

    ii.    <u>Certification is an Appropriate Remedy</u>

Streeters' counsel were optimistic specific objects to inapplicable Montana case law and adeptly distinguished out of jurisdiction case law improperly cited by the Magistrate were likely to result in Judge Christensen's rejection of the Magistrate's Recommendations, a denial of summary judgment, and placing the Streeters' case back on the trial calendar.  This optimism resulted in the Streeters'

counsel not requesting certification to the Montana Supreme Court of the issue of the standard for implementation of cooperation clauses. In retrospect, the question of certification ought to have been presented to Judge Christensen as a part of the Streeters' Objections to the Magistrate's Recommendations. Yet to be determined Montana substantive law will very likely alter the direction of the undisputed facts present in the matter *sub judice*. Montana substantive law to be determined by certification is likely to result in the failure of USAA GIC to satisfy its burden of proof. The requirements of other jurisdictions for use of cooperation clauses to void coverage are likely to be adopted by Montana. The various directions that other jurisdictions have headed on the issue of cooperation clauses is, therefore, instructive as to whether this Court ought to certify the substantive law question to the Montana Supreme Court, or in the alternative reverse summary judgment and remand with instructions for the District Court to certify the proposed question.

iii.  <u>Failure to Cooperate Requires Prejudice</u>

In order to curtail an insurer's ability to claim that a minor breach of the duty to cooperate clause could result in a forfeiture of the policy, a majority of jurisdictions require an insurer to deny coverage only where the insurer has suffered prejudice as a result of the insured's breach of his or her duty to cooperate. *Darcy*

20

*v. Hartford Ins. Co.*, 407 Mass. 481, 488-89, 554 N.E.2d 28, 33 (1990)(citing

*Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 881-82, 587 P.2d 1098 (1978);

*Rochon v. Preferred Accident Ins. Co.*, 118 Conn. 190, 198, 171 A. 429 (1934);

*Brooks Transp. Co. v. Merchants Mut. Casualty Co.*, 36 Del. 40, 55, 171 A. 207

(1933); *American Fire & Casualty Co. v. Vliet*, 148 Fla. 568, 571, 4 So. 2d 862

(1941); *Farley v. Farmers Ins. Exch.*, 91 Idaho 37, 40, 415 P.2d 680 (1966).  For

example, Pennsylvania requires that the prejudice be demonstrated and not

presumed.  *Prudential Property and Casualty Co. v. Erie Ins. Co.*, 660 F. Supp. 79,

81 (E.D. Pa. 1986).  Other states have enacted statutes which set forth the standard.

*See State Farm Mut. Auto. Ins. Co. v. Davies*, 226 Va. 310, 310 S.E.2d 167 (1983);

*Clark Equip. Co. v. Arizona Property and Casualty Ins. Guar. Fund*, 189 Ariz.

433, 943 P.2d 793, 801 n.9 (Ariz. App. 1997).

Even though the focus of the court's attention is upon the insured's conduct,

the insurer's behavior will not be ignored.  In fact, some states applying the actual

prejudice standard will still require the insurer to prove that it exercised due

diligence and good faith in attempting to obtain the insured's cooperation.  *See*

*National Union Fire Ins. Co. v. Cagle*, 68 F.3d 905 (5th Cir. 1995)(Louisiana law

applied); *Stewart Sleep Ctr. v. Atlantic Mut. Ins. Co.*, 860 F. Supp. 1514 (M.D. Fla.

1993); *Bowyer v. Thomas*, 188 W. Virg. 299, 423 S.E.2d 906 (1992).

Even in the rare instance where a jurisdiction does not require the insurer to show that it has been actually prejudiced as a result of the insured's lack of cooperation, a minor breach of the duty to cooperate clause will not be sufficient to allow an insurer to disclaim coverage. In New York, the courts will require an insurer to show that its efforts were diligent and reasonably calculated to bring about the insured's cooperation. In addition, the insurer will have to show that the insured's failure to cooperate was "willful and avowed obstruction." *See Utica Mut. Ins. Co. v. Gruzlewski*, 217 A.D.2d 903, 630 N.Y.S.2d 826 (1995).

Regardless of the standard applied, the courts will always examine the insurer's conduct. If the insurer cannot demonstrate that it utilized its best efforts to gain the insured's cooperation and, when necessary, protect the insured's interest, the courts will be reluctant to find that the insured's actions constituted a substantial breach. *See* case cites, *supra*, and *infra*. Here, where the Streeters made initial and continual acts of cooperation, and USAA GIC paid some of the policy benefits, then moved to terminate the payment of additional benefits based upon a presumption of prejudice that was never proven or specifically articulated, there is plenty of room for the Montana Supreme Court to set a standard based upon the

22

case law of other jurisdictions that will result in the reversal of the present summary judgment ruling.

    iv.    <u>Substantial Case Law and Treatises Contradict the Court's</u>
<u>Ruling</u>

While there is a dearth of case law on the topics of non-cooperation and prejudice of an insurer in Montana, other courts have held that possible, theoretical, conjectural, or hypothetical prejudice is not enough to allow an insurer to disclaim coverage on the ground that the insured has breached an insurance policy by failing to cooperate with the insurer. § 49:110. Excuse of violation of cooperation clause, 16 Williston on Contracts § 49:110 (4th ed.).

When an insured deliberately fails to cooperate with its insurer in the investigation of a claim as required by the policy, the insurer may disclaim coverage. However, to prevent innocent injured parties from suffering the consequences of a lack of coverage based upon "the imprudence of the insured, over whom he or she has no control," courts strictly scrutinize the facts and will allow a disclaimer due to lack of cooperation only where, inter alia, the insured's actions are deliberate (*Matter of New York Cent. Mut. Fire Ins. Co. v. Salomon*, 11 A.D.3d 315, 316, 782 N.Y.S.2d 730 (2004); *Mount Vernon Fire Ins. Co. v. 170 E. 106th St. Realty Corp.*, 212 A.D.2d 419, 421, 622 N.Y.S.2d 758 (1995), *lv. denied* 86 N.Y.2d 707, 632

23

N.Y.S.2d 500, 656 N.E.2d 599 (1995), citing *Thrasher v. United States Liab. Ins. Co.*, 19 N.Y.2d 159, 168, 278 N.Y.S.2d 793, 225 N.E.2d 503 (1967)).

In an effort to prevent innocent injured parties from being penalized in liability insurance situations due to a complete absence of insurance coverage for the imprudence of the insured, over whom he or she has no control, a very heavy burden is imposed upon the insurer who disclaims for failure to cooperate. Cooperation clause, generally, 16 Williston on Contracts § 49:108 (4th ed.)(citing *New York Cent. Mut. Fire Ins. Co. v. Salomon*, 11 A.D.3d 315, 782 N.Y.S.2d 730 (1st Dep't 2004)).

USAA GIC has a heavy burden to establish that its denial of coverage was justified based on the Streeters' alleged failure to cooperate, and the Article III Judge's determination that the burden had been met in sweeping, conclusory fashion. The Article III Judge also determined, without sufficient analysis, that USAA GIC had been prejudiced as a result of the alleged failure to cooperate. The issues of cooperation and prejudice are not only issues for a jury to decide and, therefore, inappropriate for summary judgment, but are also issues which deserved substantial analysis and application in order to dispose of the issues (and the case as a whole) on summary judgment.

Furthermore, prejudice cannot be surmised or presumed from the mere fact of delay. *Id.* (citing Md. Code Ann., Ins. § 19-110. *National Union Fire Insurance Company of Pittsburgh, PA. v. The Fund for Animals, Inc.*, 451 Md. 431, 153 A.3d 123 (2017). *See* also similar holding in *State Farm Mut. Ins. Co. v. Murion*, 439 F.2d 945, 947 (9th Cir. 1971) ["Prior to trial the district court ruled that State Farm must show that it was somehow prejudiced by the delay in notification. . ."]. While the insurer is not required to show that the insured openly "avowed" its intent to obstruct the investigation of a claim, the facts must support an inference that the failure to cooperate was deliberate. In *Thrasher v. United States Liab. Ins. Co.*, (19 N.Y.2d 159, 168), the Court of Appeals held that, in order to prove lack of cooperation relieving it of its obligations under a cooperation clause, an insurer must demonstrate that it acted diligently in seeking to bring about the insured's cooperation, that its efforts were reasonably calculated to obtain the insured's cooperation and that the attitude of the insured, after his cooperation was sought, was one of "'willful and avowed obstruction'." *Mount Vernon Fire v. 170 E. 106th St. Realty*, 212 A.D.2d 419, 420 (N.Y. App. Div. 1995)(quoting *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 276)).

An insurer releases its insured from the duty to cooperate by denying

25

coverage or taking measures that render cooperation futile. § 49:110. Excuse of violation of cooperation clause, 16 Williston on Contracts § 49:110 (4th ed.)(citing *J.P. Morgan Securities Inc. v. Vigilant Ins. Co.*, 53 Misc. 3d 694, 39 N.Y.S.3d 864 (Sup 2016)). Furthermore, some jurisdictions hold that what may appear initially to be a breach of the cooperation clause by an insured may be excused, if it develops that the failure of the insured was due to mistake, and that there was no exercise of bad faith on his part. *Cribari v. Allstate Fire & Casualty Insurance Company*, 375 F. Supp. 3d 1189 (D. Colo. 2019). This is certainly the case here, where the Streeters not only granted USAA GIC complete access to the requested records at one point in time, but they cooperated and continued to cooperate with every component of the investigation. They never acted in bad faith, nor did they deliberately intend to interfere with USAA GIC's investigation or otherwise exhibit non-cooperation. Any possible question of cooperation was at best an issue of fact, and inappropriate for a summary judgment ruling.

Cooperation is essential to the insurance relationship because that relationship involves a continuous exchange of information between an insurer and an insured interspersed with activities that affect the rights of both, and the relationship can function only if both sides cooperate. § 49:108. Cooperation

26

clause, generally, 16 Williston on Contracts § 49:108 (4th ed.)

Most courts require that, before the insured will be deprived of rights under the policy, the breach of the cooperation clause must be both substantial and material to the insured's liability. *See* cases, *supra*. In addition to being substantial and material, it is often held or required by statute that the violation of the cooperation clause must cause actual prejudice to the insurer before liability can be avoided under the policy. Montana has adopted the need for prejudice. *See State Farm v. Murion, supra*.

Williston on Contracts provides guidance. To effectively deny insurance coverage based upon lack of cooperation, an insurer must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, (3) that the attitude of the insured, after cooperation was sought, was one of willful and avowed obstruction, and (4) the insured's failure to cooperate prejudiced the insurer. While an insurer who alleges a violation of a policy's cooperation clause need not show that the insured openly avowed an intent to obstruct the insurer, it is a heavy burden to show circumstances that support the inference that the insured's failure to cooperate was deliberate. Cooperation clause,

27

generally, 16 Williston on Contracts § 49:108 (4th ed.).

        v.    District Court Relieved Insurer from its Burden of Proof

The case law from most jurisdictions places the burden of proof for establishing a breach of an insurance policy's cooperation clause upon the insurer. *Country Mutual Insurance Company v. Under Construction and Remodeling, Inc.*, 2021 IL App (1st) 210600, 2021 WL 6061771 (Ill. App. Ct. 1st Dist. 2021), other citations omitted.  Here, the Magistrate and Article III Judge's decisions incorrectly relieved USAA GIC from its burden of proof and incorrectly, judicially presumed lack of cooperation from isolated circumstances without consideration of the considerable acts of cooperation performed by the Streeters.  The Judges in tandem used references to deletions to create a sense of nefarious conduct by the Streeters regarding their digital data.  1-ER-9; 2-ER-122.  Absent from the decisions is any connection between claims of deletion and the actual prejudice to USAA GIC required by most jurisdictions case law.  Instead, a presumption of prejudice was belatedly asserted months into protracted litigation.  Omitted from the Judges' decisions are the continual requests of Streeters' initial attorney following the Streeters supplying data to USAA GIC and after the August 26 "suspension" of transfer of supplied data.  The Streeters' requests received no responses from USAA

28

GIC. *See* Hutchinson's detailed letters of September 4, 2019 (1-ER-99 to 101);

September 13, 2019 (1-ER-103); October 9, 2019 (1-ER-105 to 108); December 30,

2019 (1-ER-109 to 110). If USAA GIC wanted to receive access to the "suspended"

transfer of data, USAA GIC had every opportunity to do so over the span of many

months, and simply failed to do so. The summary judgment decision ignores

genuine issue of fact as to whether the Streeters failed to cooperate that should have

been a jury question. The Magistrate and the Article III Judge abused their

discretion in relieving USAA GIC of its burden of proof and incorrectly, judicially

determining lack of cooperation.

Overlaying this entire analysis are compelling questions. Where is the motive

for an underinsured family to intentionally cause a loss of their property? The first

fire was determined to be accidental as acknowledged by USAA GIC's own

investigator, Norm Loftin, now the expert for the Streeters. 4-ER-621. At the time

of the second fire the Streeters had been documented to be in their hotel room,

hence lack of any opportunity as agreed to by Norm Loftin. 4-ER-542. Further,

Norm Loftin agreed that the proper classification of the second fire was

"undetermined". 4-ER-623. Testing for ignitable liquids by four samples done by

Norm Loftin were negative. 4-ER-551 to 552. Upon careful analysis claims and

29

conclusions of nefarious actions have no substance.

      vi.   <u>Proposed Certified Question</u>

Pursuant to Rule 15 of the Montana Rules of Appellate Procedure, a federal district court may certify questions to the Montana Supreme Court for instruction. *See* Mont. R. App. P. 15(3). Certification is proper where: "(a) The answer may be determinative of an issue in pending litigation in the certifying court; and (b) there is no controlling appellate decision, constitutional provisions, or statute of this State." *Id.* While a federal court is not obligated to certify a question when there is uncertainty about the status of state law, doing so "save[s] time, energy, and resources and helps build a cooperative judicial federalism. *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)". *See* also *Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144, 1158-59 (2017) (Second Circuit's decision not to certify because state law was "undeveloped" was an abuse of discretion) and *McKesson v. Doe*, 141 S.Ct. 48, 50 (2020) (The Court reasoned the dispute could have been "greatly simplified" by guidance from the Louisiana Supreme Court.)

This Court is requested to consider certifying the following question to the Montana Supreme Court: **What is the standard to be utilized to implement cooperation clauses when being used to terminate insurance benefits?**

### C.     Court's Cases Inapplicable to the Streeters' Facts

Although the Magistrate and Judge Christensen used the language of three

Montana cases for discussion purposes, none of those cases, by acknowledgment,

controlled the factual circumstances of the matter *sub judice*, and actually are

factually distinguishable and inapplicable.  The three Montana cases cited were

*Contractors Bonding and Insurance Company v. Sandrock*, 321 F. Supp. 3d 1205,

1211-12 (D. Mont. 2018), *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 150-51

(Mont. 2011), and *Seymour v. Safeco Ins. Co. of Illinois*, 2014 WL 1254877 (D.

Mont. July 24, 2014).  All three cases are not applicable to the Streeters' factual

circumstances.

In both *Steadele* and *Contractors*, the insurer was presented with a default

judgment without having ever being provided notice of an underlying claim.  2011

MT 208 at ¶¶ 1-3; 321 F.Supp.3d 1205 at 1205.  Even though it is well established

in Montana that "an insured's technical or illusory failure to comply with

obligations of a policy will not automatically terminate coverage," the Courts held

that the insureds had violated the notice-prejudice rule and upheld denial of

coverage in these cases because the insurers had been "depriv[ed] of [any] ability to

investigate, to locate witnesses, to appoint counsel, to engage in discovery, to

negotiate a settlement, and to develop a trial strategy." 2011 MT 208 at ¶ 28; 321 F.Supp.3d 1205 at 1211 (citing *Atl. Ca. Ins. Co. v. Greytak*, 379 Mont 332, 250 P.3d 63 (2015)). As it is undisputed that the Streeters timely notified USAA GIC of the claim, and USAA GIC had the opportunity to fully investigate its merits prior to issuing any payment, the rationale of these notice-prejudice cases is inappropriate for justifying summary judgment in this case. Further, these cases are third-party claims cases, resulting in tort claims against the insured. Completely contrary to the Streeters' first-party loss claim.

The Magistrate and Article III Judges also relied heavily upon *Seymour v. Safeco Ins. Co. of Illinois*, 2014 WL 12545877, at *8 (D. Mont. July 24, 2014), which is also opposite. In *Seymour*, an insured refused to provide an estimate for additional damages alleged to have been caused by hail prior to filing suit against their insured and despite warnings from the insured the claim would be denied absent the additional information. 2014 WL 1254877, at * 8. As such, the claim was dismissed by the Montana District Court on summary judgment for failure to meet the conditions precedent to establish coverage. *Id.* The timing of the initiation of litigation also distinguishes *Seymour* where suit was filed without substantial compliance with the insurer's requests. While here, suit occurred fifteen months

32

after the loss, during which time there was substantial compliance and cooperation by the Streeters. *See* cooperation time line, *supra*.

Here, the Streeters' facts do not coincide with any of the three Montana cases relied upon in granting summary judgment. The record before the Court shows the Streeters complied with USAA GIC's request for the complete download of their electronic information. 8-ER-1627, ¶17. That information was then presented to USAA GIC by OneSource. At no time were the Streeters specifically placed on notice that USAA GIC was claiming an inability to adequately investigate the claim because of their actions or that coverage may be denied if the supplemental electronic records were not provided.[10] The direct comparison of the Streeters' undisputed factual circumstances to those in *Seymour* is clear error. Hypothetical presumed prejudice is insufficient to terminate coverage.

Certification of the question proposed is absolutely necessary. The Court's "Erie Guess" of Montana case law is unjust to the Streeters who ought to have the benefit of definitive Montana substantive law, rather than the court cherry picking

---

10 *See* communication from Streeters' initial counsel, most of which was ignored by USAA GIC. Time line, *supra*. No notice was provided stating the August 26 "suspension" of use of supplied digital data could result in voiding of coverage in the fifteen months prior to litigation being filed. Eventually in discovery all data supplied was available.

out of jurisdiction case law to defeat their claims, while ignoring other jurisdictions

case law disallowing summary judgment and requiring factual determinations by a

jury. The Magistrate and the Article II Judge certainly did not view the evidence in

the light most favorable to the Streeters as required by the standard of review.

> **D.    The Cases upon Which the District Court Relied Are Inapplicable to the Facts in the Case at Bar**

>> i.    Court's Selection on Case Law from Other Jurisdictions

The Magistrate's reliance on out of jurisdiction cases *Habecker v. Peerless*

*Ins. Co.*, 2008 WL 4922529 (M.D. Pa. Nov. 14, 2008), *McCoy v. Travelers*

*Indemnity Company of America*, 2002 WL 31186978, at *5-6, 10 (M.D. Pa. Fe. 8

2002), and *Tran v. State Farm Fire and Cas. Co.*, 136 Wash.2d 214 (1998) was

demonstrated in the Objections to have been misplaced. 1-ER-85 to 88. Yet, the

Article III Judge repeated the citations to *Habecker* and *Tran* without consideration

of the Streeters' Objections. 1-ER-14. In *Habecker*, the operators of a restaurant

that was damaged in a fire initially cooperated with their insurance company's claim

investigation but then completely refused the insurer's repeated requests for an

inventory list and for authorization to review their tax records. *Habecker*, 2008 WL

4922529, at *1-3. In response, Peerless sent two (2) letters to Habecker's counsel

stating the claim could not proceed until the information was provided, and a third

letter ultimately denying the claim when the first letters went unanswered. *Id*. at *3. Based on Habecker's failure to produce, and Peerless' notice thereof, the court granted summary judgment in favor of Peerless for failure to cooperate in the loss investigation. *Id*.

Likewise, in *McCoy*, Travelers requested access to relevant documents and third parties with records regarding McCoy's business's financial condition after an incendiary fire burned the business down. 2002 WL 31186978, at *2. When the information was not produced, Travelers rejected the claim under numerous violations of the cooperation clause. *Id*. Rather than remedy and provide the requested information, counsel for McCoy revoked all authorization for the insurer to investigate the claim and instead filed suit in state court, in violation of another provision of the insurance contract. *Id*. at *3. The Court upheld summary judgment for Travelers after finding the requested information was relevant to a claims determination and that McCoy had violated the cooperation clause of his Policy by completely revoking Traveler's authorization to investigate whether the claim was valid. *Id*. at *4-5.

Finally, in *Tran*, State Farm sent Tran's attorney a letter requesting the addresses and phone number of certain persons Tran had identified at his

examination, records of inventory purchases and sales, financial information, and a copy of an estimate for repair of the door through which the business premises had allegedly been entered for a theft claim. *Tran*, 136 Wash.2d 214 at 222. Neither Tran, nor his attorney, responded to this letter, prompting State Farm to notify Tran that it was "denying his claim on the basis that he had breached policy's cooperation clause by failing to provide the requested financial information in connection with the investigation of his loss." *Id*. Over a year later, Tran commenced action against State Farm and the Court granted summary judgment against him for failure to cooperate. *Id*. at 223-224.

Unlike *Habecker*, *McCoy*, and *Tran*, and contrary to the Magistrate's Findings and the Article III Judge's affirmation of the Magistrate's Recommendations, the Streeters never revoked their July 17 Authorizations. USAA GIC also never put the Streeters on notice that their cooperation was insufficient and prejudiced USAA GIC's investigation. Finally, there was no denial of the Streeters' claim. Rather, the Streeters participated in USAA GIC's investigation for seventeen (17) months before filing a lawsuit, made multiple offers to accommodate USAA GIC for any information deemed non-compliant, and received partial payments for a valid claim. The Magistrate committed clear error in using the

*Habecker*, *McCoy*, and *Tran* citations and this error was perpetuated by the Article III Judge. In actuality, there is plenty of proof for jurors to conclude that the Streeters substantially cooperated with USAA GIC's claim investigation. *See* time line, *supra*.

   ii. <u>The District Court Erroneously Relied upon Inapposite Case Law from Jurisdictions Other than Montana</u>

  The Article III Judge referenced some of the same cases cited by the Magistrate that have been distinguished by the facts *sub judice*. *See Habecker* and *Tran*, *supra*. Acknowledging the now distinguished cases, and the lack of definite Montana law, the Article III Judge incorrectly contended the now distinguished and inapplicable Montana cases "provide support for the conclusion that, under Montana law noncooperation with the terms of an insured's policy can preclude coverage." 1-ER-13. The Article III Judge then recognizes the need to "look to decisions from other jurisdictions to determine the appropriate standard for whether noncooperation has occurred." 1-ER-13. The Article III Judge then acknowledges the source for his conclusion "USAA cites to several decisions that provide guidance." 1-ER-13. The Article III Judge then cites to a case provided by USAA GIC, *Hall v. Allstate Fire and Casualty Ins. Co.*, 20 F. 4th 1319,1323 (10th Cir. 2021) for determining the applicable standard for determining noncooperation as

37

requiring three elements of proof, i.e., (1) the insured failed to cooperate in a material and substantial respect, (2) with an insurer's reasonable and material request, (3) thereby causing actual prejudice to the insurer's ability to evaluate and investigate a claim. 1-ER-13 to 14. The Article III Judge then correctly quotes from *Hall*, ("For an insurer to assert the affirmative defense of failure to cooperate, it must show: (1) 'the insured fails to cooperate with the insurer in some material and substantial respect'; and (2) 'this failure to cooperate materially and substantially disadvantaged the insurer.'") 1-ER-14. The Article III Judge failed to note the next sentence from Hall, "Although the question of whether an insured failed to cooperate is a question of fact, if 'the record can produce no other result' than a finding of a failure to cooperate, the insurer is entitled to summary judgment." *Hall*, at 1323, citing *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989). Here, the record provides considerable undisputed facts supporting continuous cooperation. *See* time line, *supra*.

Certainly the facts in *Hall* provided a record for summary judgment since there, contrary to the Streeters' facts, there were undisputed facts supportive of continual and repeated failure to cooperate. *Hall* involved an uninsured motorist claim asserted after a consensual settlement of an underlying tort claim for the

$25,000 liability limits.  *Id.* at 1321-22.  The Allstate adjuster repeatedly left voicemails and sent letters over a period of three months.  Hall's counsel did not respond to any of the five attempts over three months: two voicemails and three letters.  Then within days of Allstate's last unanswered attempt to discuss the claim and without any prior notice to Allstate, Mr. Hall filed suit against Allstate for breach of contract, statutory unreasonable delay or denial of payment of benefits, and common law bad faith.  *Id.*, 1322.  During the course of litigation Allstate filed a motion for summary judgment arguing that Mr. Hall could not recover his benefits because he ignored Allstate's phone calls and letters, failed to inform Allstate of his additional treatment at a Clinic, and sued Allstate for bad faith.  The Article III Judge's citation to *Hall* as being support of summary judgment under the Streeters' facts is way off the mark; especially since the Article III Judge's affirmation of the Magistrate Recommendation for entering summary judgment against the Streeters failed to cite to the extensive and repeated acts of cooperation of the Streeters as specifically documented in the Streeters' Objection to the Magistrate's Findings and Recommendations.  2-ER-157 to 159.

The Article III Judge followed the Magistrate's lead and incorrectly makes the following comment, "Furthermore, the evidence indicates that the Streeters deleted

39

data from their cell phones after the filing of their claim, as evidenced by the missing call records, despite the preservation letter provided by USAA." 1-ER-15. The billing records provided to USAA GIC by the Streeters within days of the claim provided dates of calls, call numbers, and times of all calls. 8-ER-1627; 8-ER-1660 to 1677. Obviously these billing records are accurate and provide the road map for when and what calls were made and what text messages sent during the time of the Streeters fire. So the question becomes, why would the Streeters delete any information from their devices having already provided to USAA GIC the exact records for information that USAA GIC contends now were deleted? The actual phone data is detailed in the claims file and were exhibits to David Streeter's Deposition. 8-ER-1660 to 1677. Then in the course of discovery data provided by the Streeters to USAA GIC's agent OneSource was released for examination, including activity that the Court summarily concluded was deleted based upon statements from USAA GIC's disclosed experts. 6-ER-962 to 1228.

### E. The Data Phone Records are a Red Herring

The Streeters' counsel were confident with the substantial disclosure of information and cooperation by the Streeters the Magistrate's unexpected summary judgment decision would be reversed based upon the extensive facts supportive of

40

the significant cooperation by the Streeters and distinguishment of all of the

citations of the Magistrate supportive of summary judgment. 2-ER-146 to 177.

Obviously, the Streeters' counsel were overly confident that there would be a true

*de novo* review of the record. So now the Streeters find themselves with vague

references to the record based entirely from USAA's prospective, yet, cited by the

Article III Judge to what is alluded to be nefarious conduct on the part of the

Streeters as the rationale for the presumption of prejudice; all used as premises for

the incorrect conclusion that there was a failure to cooperate supportive of summary

judgment precluding all of the Streeters uncompensated insurance contractual

benefits and potential bad faith claims. E.g., ["USAA's investigator noted that

David Streeter's call log was missing calls from July 10 to July 12, 2019, that

appeared in the Verizon records the Streeters had previously provided."] 1-ER-6.

The Verizon records show when calls were made and the numbers called. 8-ER-

1660 to 1677. USAA GIC had every opportunity to ask questions about each call in

the Sworn Statement and failed to do so.[11]

    The Streeters' position is that the data issues are really a red herring, created

---

    11 The Streeters will request that the record be supplemented with their
Sworn Statements, which were referenced several times in depositions and
pleadings.

after the fact by USAA GIC to manufacture a lack of cooperation that really never existed to begin with. USAA GIC had its own problems for deleting data from its claims file, that the Magistrate and the Article III Judge failed to address. 5-ER-833 to 889; 6-ER-944 to 1235.

### F. The Court's Presumption of Prejudice Ignored Law Favoring Streeters

The Article III Judge abused his discretion by using erroneous findings of fact. *Am. Beverage Ass'n. v. City of San Francisco*, 916 F. 3d 749, 754 (9th Cir. 2019) (*en banc*). The Magistrate and Article III Judge, on several occasions, wrongfully concluded the Streeters "revoked" their authorization to examine digital data. 2-ER-139, line 2; 2-ER-140, line 1; 2-ER-141, line 9. As repeatedly noted in the Streeters' Objections there is a vast distinction between the definition of a "revocation" and the definition of a "suspension" of which the Streeters request this Court take judicial notice.

"Revoke" means "to annul or make void by taking back or recalling; to cancel, rescind, repeal, or reverse." Black's Law Dictionary (11th Ed. 2019). "Suspend," on the other hand, means "to interrupt; postpone; defer. To temporarily keep (a person) from performing a function, occupying an office, holding a job, or exercising a right or privilege." *Id.* The language of the Streeters' email clearly

establishes a temporary suspension until reasonable requests for communication were met, not the complete revocation depicted by the Magistrate inhibiting USAA GIC's ability to investigate the Streeters' claim. Importantly, when asked by the Court during oral argument, counsel for USAA GIC admitted it never attempted to meet the simple requests of the Streeters or request that the suspension be lifted at any time. 2-ER-68 to 69.

Using an inaccurate depiction of the facts, the Magistrate incorrectly concluded "No reasonable juror could find based on the evidence outlined above that the Streeters substantially cooperated with USAA GIC's request for electronic records as required under the terms of the Policy." 2-ER-135. The Magistrate's finding was later adopted by Article III Judge Christensen after objections were advanced by Streeters, inclusive of the wrongful determination that Streeters "revoked", not "suspended" authorizations, when the evidence of the singular August 26, 2019 email clearly uses "suspend" with relatively mundane conditions for lifting the suspension. 8-ER-1566.

There are numerous alternatives to the summary judgment based on decisions ignored by the Magistrate and ratified by the Article III Judge Christensen. The case law of jurisdictions regarding notice and actual prejudice was disregarded as viable

alternatives to the summary judgment option selected by the Magistrate and ratified by the Article III Judge Christensen.

For example, noncooperation is an affirmative defense to liability under an insurance contract under Florida law where such provisions are part of a policy. To succeed in avoiding liability by use of lack of cooperation a Florida insurer is required to prove the following four elements: 1) that the insured failed to cooperate as required in the contract; 2) that the failure was material to the determination of the claim; 3) that the failure caused the insurer substantial prejudice; and 4) that the insurer exercised due diligence and good faith in bringing about the insured's compliance with the cooperation requirement of the contract. *Stewart Sleep Center, Inc. v. Atlantic Mutual Ins. Co.*, 860 F. Supp. 1514, 151 (1993), other citations therein omitted. Interestingly, the *Stewart* case was a fire incident, where the insurer sought judgment as a matter of law and a new trial after the insured obtained a substantial breach of contract verdict against the insurer. *Id.*

Applying the *Stewart* elements to the matter *sub judice*, there is substantial evidence that none of the four required elements could be factually determined by a preponderance of the evidence. Hence, a jury could likely conclude that the Streeters' meager suspension actions were insufficient to satisfy all four elements

44

required to prove a failure to cooperate. Further, claims of data deletion of material information were never proven to exist or to have created prejudice. Certainly, USAA GIC never made any attempt to satisfy the fourth *Stewart* element concerning the Streeters' compliance. As John Lentini, a nationally recognized fire expert disclosed, "who has not accidently deleted a text message." 2-ER-233, 245 ¶39. USAA GIC has failed to connect any deletions to anything material to the determination of the Streeters' claim. Streeters were underinsured, had no motive to destroy their home, and were in a hotel when the fire that likely was a rekindle destroyed their home. 2-ER-243, ¶34; 2-ER-244, ¶38. Then the Magistrate and Judge Christensen just filled in the blanks and incorrectly presumed any deletion was prejudicial. The Magistrate and the Judge Christensen have taken away the Streeters opportunity to obtain additional policy benefits by utilizing case law foreign to Montana favorable to USAA GIC, while ignoring foreign case law that Montana may well adopt favoring the Streeters' right to a jury trial on the issue of cooperation. Reversal of summary judgment and either a remand instruction that the District Court certify the question of Montana substantive law to the Montana Supreme Court, or a request for certification directly from this court is the proper remedy.

45

### G. Whether There Is a Lack of Cooperation Terminating Coverage Is a Jury Question

Whether there is a lack of cooperation resulting in termination of coverage ought to be a question of fact for the jury. Montana may well adopt the case law similar to Oregon that requires a warning of risk of forfeiture of coverage. *In Matchniff v. Great Northwest Insurance Company*, 224 F. Supp. 3d 1119 (D. Or. 2016) an Oregon federal court held "Although defendant's argument and evidence concerning plaintiffs' lack of cooperation is persuasive, the question of whether defendant acted with 'reasonable diligence' and whether it suffered prejudice are questions of fact. While defendant's letter and email requests sought additional information from plaintiffs, defendant did not warn plaintiffs that they were failing to cooperate or at risk of forfeiting coverage. Therefore, defendants motion for summary judgment on its noncooperation defense is denied." *Matchniff*, *Id.* at 1127.

The *Matchniff* court also referenced Oregon law. ["To establish the affirmative defense of noncooperation in Oregon, an insurer must prove that: 1) it acted with reasonable diligence and made good faith efforts to secure the cooperation of the insured; 2) the insured willfully failed to cooperate, and 3) the insurer was prejudiced."], citing *Rosalez v. Unigard Ins. Co.*, 283 Or. 63, 67, 581

46

P.2d 945 (1978) (discussing willfulness); *Bailey v. Universal Underwriters Ins. Co.*, 258 Or. 201, 224-25, 474 P.2d 746 (1970). It is very likely that Montana may adopt similar language. Here certification as to substantive law is not just an option; it is a necessity.

### H. Factual Review Places Data Issues in Perspective

On August 1, 2019, the Streeters met with a representative from OneSource and allowed the complete data extraction of their phones. 5-ER-840. The specific information provided to USAA GIC after this extraction was <u>subject only to the requested parameters of Ms. Ritchie for text and call detail logs from July 8-15, 2019</u>. 5-ER-841. When asked to confirm this in writing by the Streeters, Ms. Ritchie agreed it would satisfy USAA GIC's request for data and information. 8-ER-1625, ¶4. On August 9, 2019, Ms. Ritchie emailed Ryan Ferreira of OneSource the authorization for the data extraction per the parameters suggested and accepted by USAA GIC, and asked that the extraction take place. 8-ER-1625, ¶4.

On August 9, 2019, the same day he received permission to do a data pull of the Streeters' phones, Mr. Ferreira sent the Extraction Report to Ms. Ritchie. 8-ER-1625, ¶5. In that Extraction Report was a link and instructions with the following:

47

"Please find the links to download the zip files <u>containing the reports</u> below. Note that for security purposes, <u>this link will expire in 7 days</u>. . . As for the content of the report, once you open each report folder you will see an Excel and PDF file. These are essentially duplicative in the content they present, but they are just different formats provided depending on your preference/needs for review. The accompanying folders <u>contain the full size files which are summarized and linked</u> to form the **main PDF/Excel Reports**.

8-ER-1625 to 1628, ¶6. [Emphasis added.]

Ms. Ritchie reviewed these reports on August 15, 2019 and referenced her "notable" findings in the claims file. 8-ER-1626, ¶7. In a follow-up email to Mr. Ferreira, she confirmed that "all standard text messages (SMS and MMS), Instant Messages (from the iMessage platform), and calls from 7/8/19-7/15/19 were included in the downloads," as was requested by USAA GIC. 8-ER-1626, ¶8. When the Streeters requested copies of these reports in litigation, based on the allegations they are inconsistent with recent findings in 2022, USAA GIC reported that Ms. Ritchie failed to preserve the actual reports prior to their expiration. 5-ER-845 to 846.

On August 15, 2022, the Streeters filed a motion for spoliation and request for sanctions after discovery that USAA GIC had deleted the initial 267 page OneSource report from its claims file without informing the Streeters or their

48

counsel.  5-ER-830 to 889.  Within those reports contained irrefutable evidence that

USAA GIC had been presented with the entirety of the Streeters' phone records,

including detailed listings of any information that had been deleted.  5-ER-840.  For

USAA GIC to then come back, years later, and claim that the information had been

"withheld" or that the Streeters had been non-compliant is disingenuous, as the

information had been provided and catalogued in the claims notes.  5-ER-840.  It

was USAA GIC that allowed critical information to be deleted from its claims file,

never to be revisited by USAA GIC, the Streeters, or their counsel until litigation.

Taking this into consideration, as the lower Courts did not, raises at the very least

issues of material fact as to whether the Streeters substantially complied with USAA

GIC's requests for electronic data.  Therefore, the issue should be presented to a

jury.

## I.     The Rules of Evidence Were Ignored

Cleverly, in its Response to the Streeters' Objection to the Magistrate's

Findings and Recommendation USAA GIC's counsel partially cited to the hearing

transcript, contending that an obvious and later corrected misstatement of one of

Streeters' counsel in the summary judgment hearing transformed David Streeter's

August 26 suspension email from a suspension into a revocation.  2-ER-217;

49

8-ER-1566.  In his affirmation Order the Article III Judge duplicated USAA GIC's

ruse [". . . the record supports the conclusion that USAA's authorization to access

the requested data from One Source was revoked."]  1-ER-17.  It is clear error to

substitute the actual language in David Streeter's August email with an obvious oral

misstatement of counsel.  The Article III Judge's Order ignores the rules of evidence,

mischaracterized the contents of David's August email, and turned a blind eye to

counsel's later correction of an obvious misstatement.  2-ER-100 to 101.  The best

evidence rule required the Article III Judge to look to the August 26 email to prove

its contents.  *U.S. v. Gonzales-Benitez*, 537, F.2d 1051, 1053.

### J.  Significant Policy Benefits Unpaid and Collateral Damages Denied by Summary Judgment

#### i.  Payments Received Deceiving as to Actual Uncompensated Harm Sustained by the Streeters

Both the Magistrate, and Article III Judge Christensen reference the total

amount of the payments received by the Streeters from USAA GIC.  ["All told,

between July 2019 and May 2020, USAA GIC issued payments under the Policy

totaling more than $600,000"].  1-ER-120.  ["In total, USAA paid the Streeters

approximately $640,000 for their claim."].  1-ER-8.  What was not referenced in the

Court's Order is the sequence of the payments received, and the significant policy

benefits still unpaid to the Streeters because of USAA GIC's unreasonable delays in payment. Also, not discussed by the Magistrate or Article III Judge Christensen are the potential payments available under Montana substantive law for attorney fees and costs upon the Streeters proving the denial of policy benefits and/or delays in payment resulting in a loss of policy benefits. The purpose of this section is to fully inform this Court that although the payments received by the Streeters are significant, USAA GIC's actions resulted in potential unpaid damages far in excess of the amounts paid. The first aspect of payment that has to be detailed is the timing of the payments received and the specifics of what the payments were for.

ii.  Timing of Payments Illustrates USAA GIC's Dilatory Actions Caused Streeters Unpaid Damages

Prior to the Streeters obtaining legal representation USAA GIC in July 2019 advanced $5,000 to the Streeters for living expenses. USAA GIC was paying for the Streeters' hotel after the fire until the Streeters negotiated through counsel in 2020 the advancing of living expenses so they could obtain an RV to live in while seeking a replacement residential property. From July 2019 after payment of the $5,000 payment until February of 2020 USAA GIC made no cash advances for payment of policy benefits directly to the Streeters. 2-ER-178, 181 to 192. In the meantime, the Streeters were still having to pay their mortgage payments every month for the

home that was destroyed by fire. 2-ER-191.

In February 2020, in response to a proof of claim submitted by Streeters attorneys, USAA GIC started making contractual payments, including the payment of $395,000 for the stated value of the home, payment for out buildings, and other contractual payments inclusive of beginning to pay for personal property damage, which under the policy has limits of 50% of the stated value, *i.e.*, $197,500.[12] 2-ER-118. Other payments for specific policy benefits totaling approximately $640,000 were detailed in Judge Christensen's Order. 1-ER-8.

Summarizing, there were no payments on the policy beyond the initial $5,000 payment for over six months. During this time the Streeters' initial counsel, Matt Hutchison authored several letters on the Streeters' behalf requesting information and requesting explanations as to why no payments were being processed, and documenting the hardship and inconvenience the Streeters were enduring while living in a hotel. 2-ER-179 to 192. USAA GIC's lack of response to Hutchison is documented in his letters. 2-ER-179 to 192. Mr. Hutchison was the Streeters' counsel for sworn statements under oath that the Streeters provided on November 27, 2019. 2-ER-191 to 192. Several weeks after the sworn statements were

---

12 The entire personal property payment has never been paid and approximately $12,000 remains unpaid.

completed, Mr. Hutchison authored a December 30, 2019, letter on the Streeters

behalf, again requesting an explanation as to the reason for the delay in insurance

payments:

> The Streeters have cooperated fully, completely and voluntarily over the loss of their home with law enforcement, fire departments and with USAA. The Streeters must now demand that USAA immediately provide them with all coverage benefits provided under their insurance policy with USAA.

2-ER-191 to 192.

Mr. Hutchinson received no response to his December 30 correspondence.

Mr. Hutchinson advised the Streeters litigation was necessary and referred the

Streeters to present counsel in January, 2020. Present counsel started sending

proofs of loss to USAA's counsel in late January, 2020 and USAA accepted liability

and began making contractual payments in February, 2020. 9-ER-1834, ¶¶30-33.

Streeters' expert Bill Whalen's expert disclosure opined personal property limits

should been paid within 60 days of loss. 11-ER-2415. Therefore, proof exists that

there was significant delays in payment that ought to be a jury determination as to

damages.

iii.     Unpaid Insurance Benefits and Potential Damages

After granting summary judgment the Magistrate and Article III Judge denied

all of the Streeters' claims as moot, including the claims in their Amended

Complaint (9-ER-1827 to 1845) and their motion, brief for Partial Summary

Judgment, statement of undisputed facts regarding timely payment of stated value.

7-ER-1291-1384.  A finding of mootness is reviewed *de novo*.  *Am. Diabetes Ass'n*

*v. United States Dept. of the Army*,  938 F. 3d 1147, 1151 (9th Cir. 2019).  To

counter any impression that the Streeters have received full payment of their

insurance agreement benefits, it is necessary to summarize the unpaid benefits that

will be subject to jury and judicial determination in the event summary judgment is

deemed inappropriate.

Streeters asserted claims for failure of USAA GIC to timely pay the stated

value of their home set forth in the insuring agreement and Montana law, Mont.

Code Ann. § 33-24-102.  9-ER-1938 to 1840.  USAA GIC delayed payment of the

stated value for seven months.  9-ER-1834, ¶33.  The failure to timely pay the stated

value of $395,000 to the Streeters' mortgagee contributed to the Streeters' inability

to rebuild their home resulting in the inability to obtain the 25% add on to stated

value for the actual rebuilding costs as provided by the policy language [". . . we

54

will pay up to an additional 25% of the amount of insurance applying to the damaged building . . . actually and necessarily spent to repair or replace the damaged building, . . . ."]. 7-ER-1351. Therefore, USAA GIC's delays in payment resulted in the Streeters actual receipt of the stated value being delayed seven months and not received until February 18, 2020. 2-ER-123. The Streeters request this Court to take judicial notice of the COVID epidemic that hit Montana and the United Stated in March of 2020 pursuant to F. R. Evid. 201(c)(2), and (d). Trial testimony will be that because a COVID contractors were impossible to find resulting in rebuilding that could have been started months early contemporaneous with the fire loss became impossible for the Streeters as of March, 2020. The Streeters testimony will be that the delay in payment resulted in the need to sell their 42 Blue Sky Lane property in order to have the funds to purchase their existing housing as opposed to living in an RV or a hotel. The rebuilding insurance benefits loss to the Streeters are objectively calculable to be 25% of the stated value of $395,000 or $98,750.

Further, full personal property benefits have not been paid. Under the terms of the insuring agreement $197,500 of personal property coverage was available. 2-ER-118. Approximately $12,000 of personal property proof of claim items are still

unpaid. 9-ER-1844. [Amended Complaint amount of $14,000 was reduced by partial payments after filing of the Amended Complaint]. The Streeters have the expert testimony of a claims adjuster that the personal property limits ought to have been paid within sixty days of the fire loss. 11-ER-2416.

In addition, a very important component of the Streeters' damages is the recovery of their attorney fees and non-taxable costs under existing Montana law that were precluded by the Court's summary judgment ruling. 9-ER-1840 to 1841. Under *Riordan v. State Farm Mut. Ins. Co*., 589 F.3d 999 (9th Cir. 2009), in Montana if forced to file suit to obtain what an insurer ought to have paid attorney fees are assessable. Under *King* recovery of non-taxable costs are allowed as an exception to the American rule. *King v. State Farm Mut. Ins. Co.,* 2019 MT 208, 397 Mont. 126, 447 P.3d 1043 (2019). Upon recovery of the noted unpaid benefits, the Streeter will have the opportunity to recover their attorney fees, costs, and non-taxable costs, which is the only means by which the Streeters can be made whole. 9-ER-1840 to 1841. Given the extensive litigation procedures as evidenced by the pleadings and expert disclosures, significant attorney fees and costs may be recoverable under Montana law. 9-ER-1840 to 1841.

In addition, the District Court's ruling voided the Streeters' Unfair Claims

56

Practices Act claims which upon recovery could result in compensatory damages inclusive of emotional distress, as well as potential punitive damages. 9-ER-1837 to 1838.

In summary, although USAA GIC eventually paid the Streeters substantial amounts for part of their insurance coverages, this Court should not be lulled into believing that USAA GIC has paid all of the insurance benefits to which the Streeters are entitled. Upon reversal of summary judgment, not only are the Streeters entitled to additional insurance benefits (personal property unpaid and 25% add on to the stated value), but also the Streeters have viable jury issues for extra contractual damages, attorneys fees, and costs. 9-ER-1840, 1843. Upon reversal of summary judgment the Streeter have the ability to receive by settlement, jury verdict, and/or judicial determinations significant fees, costs, and damages allowable under Montana law. 9-ER-1843 to 1844.

## VII.  CONCLUSION

An "Erie Guess" has resulted in entry of summary judgment mandating certification of Montana substantive law by direct certification or by remand order.

Based on the totality of the circumstances, there are genuine issues of material fact as to whether the Streeters substantially cooperated with USAA GIC's

overall investigation and whether the temporary suspension of access to supplemental electronic information, pending requested communication from USAA (which never came), outweighs all other acts of cooperation.

Additionally, the district court abused its discretion by failing to recognize USAA GIC's concessions regarding the Streeters' substantial cooperation. The Streeters were provided no notice of noncompliance or communication asserting that USAA GIC perceived a Policy breach or noncompliance upon receipt of the Streeters' August 26, 2019 suspension email. There was no notification to the Streeters of any perceived Policy breach until well after litigation was initiated. In order to be made whole the Streeters we forced to hire attorneys who ultimately had to proceed with litigation to obtain the benefits of the Streeters' insurance coverage and seek damages incurred because of USAA GIC's unreasonable delays in payment.

Additionally, whether material digital data was deleted is in an if itself an issue of fact that the district court wrongfully presumed. The presumption is not supported by Montana law. Considerable adverse case law favorable to the Streeters from other jurisdictions was ignored. Summary judgment has denied the Streeters the necessary factual evaluations of a jury. Certification of controlling

58

Montana law, reversal of summary judgment, and remand for adjudication of

Streeters' damages are the required appellate remedies.

## VIII.  STATEMENT OF RELATED CASES

None.

DATED this 1ˢᵗ day of May, 2023.

/s/ Lon J. Dale
MILODRAGOVICH, DALE &
STEINBRENNER, P.C.
     *Attorneys for Plaintiffs/Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned does hereby certify that pursuant to Fed. R. App. P. 32 and Ninth Circuit Rule 32-1, *Opening Brief of Plaintiffs/Appellants* is:

X      Proportionally-spaced, Times New Roman 14 pt; is double spaced (except that footnotes and quoted and indented materials are single spaced) (as in compliance with Fed. R. App. P. 32(a)(5) and (6)); and the word count calculated with word processing software does not exceed 13,261 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, Certificate of Service and Appendix (as in compliance with Fed. R. App. P. 32(f).

X      Does not exceed 14,000 words pursuant to Ninth Circuit Rule 32-1.

DATED this 1st day of May, 2023:


/s/ Lon J. Dale

MILODRAGOVICH, DALE &
STEINBRENNER, P.C.
    *Attorneys for Plaintiffs/Appellants*